**In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION**

|  |  |
|---|---|
| VIVIAN A. SINGLETON, ) | |
| ) | Civil Action No. 9:04-21926-PMD-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| JO ANNE B. BARNHART, ) | **OF THE MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## I. INTRODUCTION

This case is before the court pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

The plaintiff, Vivian A. Singleton (the "Plaintiff"), brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(c), respectively.[1]

---

[1] The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program ("SSI"), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (DIB); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. See Bowen v. City of New York, 476 U.S. 467, 469-470 (1986).

Page 1 of 16



## II. BACKGROUND TO CLAIM

Plaintiff was born on February 15, 1955, and was 47 years old at the time of the administrative hearing on October 11, 2002. Plaintiff has a high school education and completed two (2) years of technical school training. (Tr. 15, 46) She has past work experience as a housekeeper in a hotel, presser, short order cook, and sewing machine operator.

## III. ADMINISTRATIVE PROCEEDINGS

The Plaintiff filed an application for SSI benefits on June 10, 1998 (protectively) and for DIB on June 30, 1998, alleging disability as of August 14, 1997 due to pain in her shoulder, arm, elbow, wrist, hands, and neck, problems with her left knee and her feet, and depression.[2] (Tr. 232) Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration on September 1, 1998 and upon review on April 14, 1999. (Tr. 14, 27-57) A request for hearing was timely filed on June 16, 1999. (Tr. 14) The Plaintiff's insured status expired on December 31, 1998; therefore, she had to establish disability for a continuous twelve-month period commencing on or before that date to establish entitlement to DIB. Of course, there is no insured status requirement for eligibility for SSI benefits.

On November 17, 1999, a hearing was held in Columbia, South Carolina before the administrative law judge, Ben T. DeBerry (the "ALJ"). (Tr. 27-57) Plaintiff was represented by her attorney, Minnie Whetstone, a paralegal, employed by Palmetto Legal Services, Inc. The ALJ heard testimony only from the Plaintiff.

---

[2] Plaintiff was treated occasionally for complaints regarding her left shoulder beginning in April 1995. (Tr. 134-136) On July 11, 1997, she was seen at her primary care clinic for complaints of right arm pain and swelling that was interfering with her work as a sewing machine operator. She denied any specific injury and no significant findings were noted upon physical examination. (Tr. 157)

The ALJ considered the case *de novo*, and issued a decision dated June 15, 2000, finding that the Plaintiff was not disabled as defined in the Social Security Act, as amended. (Tr. 120) On January 16, 2001, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's finding the final decision of the Commissioner of Social Security. See 20 C.F.R. §§ 404.981, 416.1481. A civil action was filed in the United States District Court for the District of South Carolina, and on July 26, 2001, the Commissioner moved for remand of the case pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 253-257) On August 15, 2001, the Honorable Terry L. Wooten, United States Magistrate Judge, ordered that the case be remanded for further proceedings, as more fully set out in the Order.[3] (Tr. 250-252) Thereafter, the Appeals Council issued an order remanding the case to the ALJ, who was to obtain additional evidence, including medical reports, and evaluate Plaintiff's impairments, including fibromyalgia and carpal tunnel syndrome. (Tr. 258-259)

On March 27, 2002, ALJ DeBerry requested that the Plaintiff's attorney provide medical records from February 4, 2000 to that date in order to obtain an updated medical history. (Tr. 267-268)

The Plaintiff appeared for a hearing on May 21, 2002, before ALJ DeBerry, but her attorney requested that the hearing be postponed until all additional medical evidence could be obtained and submitted for the record. (Tr. 377-388) The hearing was rescheduled and the Plaintiff and her attorney, Mr. Toal, appeared on February 6, 2004, in Columbia, South Carolina, before ALJ DeBerry. (Tr. 365-376) At that hearing, the Plaintiff's attorney told ALJ DeBerry that Plaintiff's medical records were as up to date as possible through July 14, 2003. (Tr. 368)

---

[3] The parties had consented to a decision by a United States Magistrate Judge. (Tr. 250)

Page 3 of 16

Plaintiff testified that she was frightened of crowds, she had difficulty remembering things, and her right arm was painful all of the time. (Tr. 371-372) Plaintiff also testified that her back hurt and she had weakness in her legs. (Tr. 373-374) Plaintiff took Vioxx and Tylenol for her pain. (Tr. 375)

After the supplemental hearing, ALJ DeBerry issued a decision on April 27, 2004 which found that Plaintiff was not disabled. (Tr. 231-247) Plaintiff, through her attorney, appealed the decision and requested a new hearing. (Tr. 226-227) On June 19, 2004, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 223-225) The Plaintiff has exhausted her administrative remedies. The parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).

## IV. THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:



1. The claimant met the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 1998, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the onset of disability.

3. The claimant's musculoskelatal impairment of the right shoulder, status post rotator cuff repair, has been a "severe" impairment, based upon the requirements in the regulations (20 CFR §§ 404.1520 and 416.920), since January 1999, but not prior to that point in time. Prior to December 31, 1998, the claimant did not have any impairment or impairments that significantly limited her ability to perform basic work-related activities; therefore, the claimant did not have a "severe" impairment prior to that date.

4. Her medically determinable impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations relating to her limitations are not totally credible for the reasons set forth in the body of the decision.

Page 4 of 16

6. Since January 1999, the claimant has retained a residual functional capacity for a range of work up to the heavy level of exertion, restricted to precluded more than occasional overhead reaching with the right arm.

7. The claimant's past relevant work, as a housekeeper, presser, short order cook, and sewing machine operator did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's medically determinable musculoskeletal impairment of the right shoulder, status post rotator cuff repair has not prevented the claimant from performing her pas relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e).

## V. APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (2004); Heckler v. Campbell, 461 U.S. 458 (1983); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). The five questions are:



(1) whether the claimant is engaged in substantial gainful activity as defined in Sections 404.1510, 404.1571 et seq., 416.971 *et seq*. If such determination is affirmative, no disability will be found. 20 C.F.R. §§ 404.1520, 416.920;

(2) whether the claimant's impairments meet the durational requirement (Sections 404.1509 and 416.909), and are severe (Sections 404.1520(c), 416.920(c)). If they do not meet those requirements, no disability will be found. 20 C.F.R. §§ 404.1509, 416.909, 404.1520(c), 416.920(c);

(3) whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. §§ 404.1520(d), 416.920(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d);

(4) whether the claimant has an impairment which prevents past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e);

(5) whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R.§§ 404.1520(f), 416.920(f).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt. 404, Subpart P, App. 1), or capable of returning to former work. In such case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. Hall, 658 F.2d 260; English v. Shalala, 10 F.3d 1080 (4th Cir. 1993); Harper v. Bowen, 854 F.2d

678 (4th Cir. 1988); Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.1983).

With respect to the general procedure for determining SSI disability benefits, the standard consists of a two-fold test: The claimant must show a medically determinable physical or mental impairment, and the impairment must be such as to render the claimant unable to engage in substantial gainful employment. Walker v. Harris, 642 F.2d 712 (4th Cir. 1981), citing Blalock v. Richardson, 438 F.2d 773 (4th Cir. 1972); 42 U.S.C. § 423(d); 20 C.F.R. § 404.1501(b).

## VI. SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g) and § 1383(6)(3), this Court's scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees with it, so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Smith v. Chater, 99 F.3d 635, 637 (4th Cir. 1996); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456; see also Smith v. Chater, 99 F.3d at 638 (the duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court), citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993). Therefore, if substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. Blalock, 483 F.2d at 775.

Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the Commissioner's decision complies with applicable law. Myers v. Califano, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Agency's] findings, and that [the] conclusion is rational. Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the

[Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g). Vitek, 438 F.2d at 1158 (citations omitted); see also Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## VII. THE ALJ'S ANALYSIS

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ first found the Plaintiff had not engaged in substantial gainful activity since August 14, 1997, the alleged onset date of her disability. (Tr 246, Finding 2). At Step Two, the ALJ found that Plaintiff established that she had a musculoskeletal impairment of the right shoulder, status post rotator cuff repair, was a "severe" impairment since January 1999, but not prior to that point in time. Before December 31, 1998 (her date last insured), Plaintiff did not have any impairment or impairments that significantly limited her ability to perform basic work-related activities. (Tr. 246, Finding 3) At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in the 20 C.F.R. Pt. 404, Subpart P, App. 1, the so-called "Listing of Impairments." 20 C.F.R. §§ 404.1520(d), 416.920(d). The ALJ also found that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 246, Finding 5) The ALJ determined that since January 1999, the Plaintiff retained the residual functional capacity ("RFC") to perform a range of work up to the heavy exertional level. (Tr. 246, Finding 6) At Step Four, ALJ found that Plaintiff's RFC did not prevent her from performing her past relevant work. (Tr. 246, Findings 7 and 8); See 20 C.F.R. §§ 404.1520(e), 416.920(e). Thus, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act. (Tr. 246, Finding 9).



## VIII. PLAINTIFF'S OBJECTIONS

Plaintiff raises three objections in her Brief, which are listed below:

Objection I.   No consultative exams were obtained.

Objection II.  The treating physician imposed a lifting limit of five pounds on Vivian Singleton. The ALJ rejected the conclusion of the treating physician that Vivian Singleton was unable to work but did not mention the reported functional limitations.

Objection III. The testimony of a vocational expert is needed when functional limitations restrict the full range of jobs available.

## IX. DISCUSSION

Plaintiff claimed she was disabled, that is, unable to perform any substantial gainful activity. The ALJ acknowledged that Plaintiff had a severe impairment--a musculoskeletal impairment of the right shoulder, status post rotator cuff repair. However, the mere presence of this impairment did not warrant a finding by the ALJ that Plaintiff was "disabled" within the meaning of the Act. Instead, the Plaintiff bore the burden to show her impairment was so functionally limiting as to preclude her from performing any substantial gainful activity for at least twelve consecutive months. See 42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265 (2002); 20 C.F.R. § 404.1509. As discussed below, the record contains substantial evidence to support the ALJ's determination that Plaintiff was not disabled.

**A.    The objective medical evidence of record demonstrated Plaintiff was not disabled.**

Plaintiff has failed to present evidence which would show that her impairment was so functionally limiting as to preclude her from performing any substantial gainful activity for at least twelve consecutive months. See Blalock, 483 F.2d at 775 (Plaintiff has the burden of proving disability, and bears the burden of non-persuasion). In the present case, the evidence indicated that while Plaintiffs musculoskeletal problem caused pain, it was not disabling. Gross

v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (pain is not disabling *per se*). Plaintiff underwent successful right rotator cuff surgery during January 1999, which improved her range of motion (Tr. 137-139, 205-206, 314). See Gross, 785 F.2d at 1166 (a condition is not disabling if it can be reasonably controlled by medicine or treatment). Furthermore, Plaintiff testified that her shoulder movement was better after surgery. (Tr. 37-38); See Cruze v. Chater, 85 F.3d 1320, 1326 (8th Cr. 1996) (a claimant's statement is substantial evidence to support the Commissioner's decision). Although Plaintiff continued to experience some pain in her shoulder following her surgery, she was consistently treated in a conservative manner with medication and physical therapy. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (conservative treatment is not consistent with an allegation of disability). As the medical records reflect, after Plaintiff had surgery in 1999, she had consistently been treated in a conservative manner and had not required hospitalization or emergent treatment. See Mickles, 29 F.3d at 930 (ALJ did not err by considering the inconsistency between claimant's level of treatment and claims of disabling pain); Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993) (lack of hospitalization or other significant treatment constitutes specific evidence which supports an acceptable credibility determination that symptoms are not disabling).

At her supplemental hearing, Plaintiff testified that her main problems were her arm and back. (Tr. 375) Similar to her arm problem, the medical evidence of record does not support her contention of a disabling back condition. Medical examinations revealed good motor strength and reflexes; x-rays demonstrated only mild degenerative changes of the lower spine, and an MRI of the lumbar spine area was negative. (Tr. 314-315, 339) In addition, after complaining to Dr. Marro of back problems during March 2002, Dr. Marro noted that Plaintiff seemed to be moving

around fairly well and appeared to be somewhat better. (Tr. 313) See Craig v. Chater, 76 F.3d 585, 591-596 (4th Cir. 1996) (objective medical evidence supported a conclusion that claimant was not disabled); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (objective medical evidence did not reflect disabling condition). Furthermore, Plaintiff's back symptoms were treated conservatively, which is inconsistent with her allegation of disability. See Robinson, 956 F.2d at 840.

Plaintiff was diagnosed with a dysthymic disorder on May 29, 2001. (Tr. 333) Treatment notes after that date from her mental health provider indicated that Plaintiff was stable, doing well and improving. (Tr. 319-320, 350) By March 20, 2002, Plaintiff's GAF was assessed at 70, indicating only mild symptoms. (Tr. 321) See Craig 76 F.3d at 591-596 (objective medical evidence supported a conclusion that claimant was not disabled); Mickles, 29 F.3d at 921 (objective medical evidence did not reflect disabling condition). Furthermore, Dr. Sneed, one of Plaintiff's mental health providers, determined that Plaintiff had no functional limitations as a result of her mental impairment. (Tr. 363-364) See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (a treating physician's opinion will be given controlling weight if it is well supported).

The Commissioner acknowledges that Dr. Jackson opined that Plaintiff was unable to work. (Tr. 220) However, consistent with regulations, the ALJ set forth specific reasons he discounted Dr. Jackson's opinion and accorded it very little weight. (Tr. 244) Furthermore, the Social Security regulations state that certain opinions of physicians are not medical opinions, at all, but rather "opinions reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the decision of disability." 20 C.F.R. § 404.1527(e). Such administrative findings include whether the claimant is disabled. It is the

responsibility of the Commissioner, not the physician, to make these administrative findings. 20 C.F.R. § 404.1527(e). Thus Dr. Jackson's opinion as to the ultimate determination of disability was not entitled to any special significance and the ALJ properly discounted it. Furthermore, case law requires that the Commissioner must accord controlling weight to a treating physician's opinion concerning the severity of a claimant's impairments only if the opinion is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. Mastro, 270 F.3d at 178. As the ALJ noted, Dr. Jackson is not identified by name in any of Plaintiff's treatment records, which raises the question whether he is a treating physician for purposes of the regulations. Even so, regardless of whether Dr. Jackson was a treating physician, his opinion was inconsistent with the other objective medical evidence of record and not supported by clinical or laboratory findings. See Mastro, 270 F.3d at 178 (a treating physician's opinion will not be given controlling weight if it is inconsistent with objective medical evidence).

In this case, substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, supported the ALJ's conclusion that Plaintiff was not disabled. See Hays, 907 F.2d at 1456. The court will not disturb this finding.

**Objection I.    No consultative exams were obtained.**

The decision to purchase a consultative examination is made on an individual case basis. 20 C.F.R. § 404.1519(a)(1) provides general guidance as to when a consultative examination should be obtained at the ALJ's behest and states, in pertinent part, that "[t]he decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis,

and prognosis) is readily available from the records of your medical sources." The purpose of a consultative examination is to provide a detailed description of the Plaintiff's main complaints, a prognosis or diagnosis of the impairment, and a statement what the individual can still do. 20 C.F.R. § 404.1519(m). In the present case, all of that information was already in the record. Specifically, Plaintiff alleged in her applications and at the supplemental hearing that her arm and back problems were the reason she could not work. (Tr. 80, 375)  An orthopedist diagnosed Plaintiff with post rotator cuff repair and mechanical back problems (Tr. 284, 315), and the majority of her physicians placed no limitations on her functions.[4] To require the ALJ to obtain a consultative examination would serve no purpose. A consultative examination should be ordered if the record reflects "the existence of a conflict, inconsistency, ambiguity or insufficiency in the evidence" or "if there is an indication of a change in condition that affects an individual's ability to work[.]" See Perkins v. Apfel, 101 F.Supp.2d 365, 372-373 (D.Md. 2000). In the present case, however, these factors are not present.

Furthermore, Plaintiff has failed to convincingly argue that a consultative examination would have resulted in any different determination, or the manner in which she was prejudiced by the ALJ's decision not to order a consultative examination. See Blalock, 484 F.2d at 775 (a plaintiff has the burden of proving disability and bears the burden of non-persuasion). Finally, it must be observed that Plaintiff's attorney stated that "with respect to any consulting exam, that would be up to [the ALJ]" (Tr. 382), and at the supplemental hearing, he did not object to the lack

---

[4] Indeed, only Dr. Jackson placed any limitations on Plaintiff, and as discussed above, the ALJ properly discounted those limitations.

of a consultative examination. Under these circumstances, Plaintiff has no grounds for arguing that the ALJ erred when he decided not to order a consultative examination.

**Objection II.   The treating physician imposed a lifting limit of five pounds on Plaintiff. The ALJ rejected the conclusion of the treating physician that Plaintiff was unable to work but did not mention the reported functional limitations.**

Next, Plaintiff argues that the ALJ erred by failing to give a good reason for rejecting Dr. Jackson's assessment of Plaintiff's limitations. As discussed above, the ALJ specifically considered the limitations imposed by Dr. Jackson and stated that he discounted them because Dr. Jackson's assessment of Plaintiff's limitations were not supported by any clinical finding or the opinion or examination of any other physician. (Tr. 244) Because Dr. Jackson's assessment of Plaintiff's limitations were not supported by clinical findings and were inconsistent with the other objective medical evidence of record, the ALJ properly discounted them. See Mastro, 270 F.3d at 178.

**Objection III.   The testimony of a vocational expert is needed when functional limitations restrict the full range of jobs available.**

At Step Four of the sequential evaluation process, based on all the relevant evidence of record, the ALJ determined Plaintiff's RFC, and further determined that Plaintiff could perform her past relevant work. (Tr. 246) See, e.g., Pass v Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (a plaintiff bears the burden of proving she is incapable of performing past relevant work). Because the ALJ determined that Plaintiff was able to perform her past relevant work, the testimony of a vocational expert was not necessary. See Smith v. Bowen, 837 F.2d 635, 637 (4th Cir. 1987) (a vocational expert enters the sequential evaluation process only after a claimant is found unable to

perform her past relevant work); 20 C.F.R. § 404.1566(e). Accordingly, the ALJ did not err by not soliciting the testimony of a vocational expert in this case.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision **be affirmed.**

George C. Kosko
United States Magistrate Judge

August 30, 2005
Charleston, South Carolina